# CHICK KAM CHOO ET AL. *v.* EXXON CORP. ET AL.

No. 87–505.   Argued March 30, 1988—Decided May 16, 1988

O'CONNOR, J., delivered the opinion for a unanimous Court. WHITE, J., filed a concurring opinion, *post*, p. 151.

*Benton Musslewhite, pro se*, argued the cause for petitioners. With him on the briefs were *Joseph C. Blanks, pro se, Joel I. Klein*, and *David Boyd*.

*James Patrick Cooney* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging affirmance were filed for Crowley Maritime Corp. by *Ernest N. Reddick III;* for the International Association of Drilling Contractors et al. by *Eugene J. Silva;* for the International Chamber of Shipping by *John R. Geraghty;* for the Maritime Law Association of the United States by *John C. McHose, Richard W. Palmer*, and *Michael*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case concerns the propriety of an injunction entered by the United States District Court for the Southern District of Texas. The injunction prohibited specified parties from litigating a certain matter in the Texas state courts. We must determine whether this injunction is permissible under the Anti-Injunction Act, 28 U. S. C. § 2283, which generally bars federal courts from granting injunctions to stay proceedings in state courts.

I

In 1977 Leong Chong, a resident of the Republic of Singapore, was accidentally killed in that country while performing repair work on a ship owned by respondent Esso Tankers, Inc., a subsidiary of respondent Exxon Corporation. Petitioner Chick Kam Choo, also a resident of Singapore, is Chong's widow.† In 1978 she brought suit in the United States District Court for the Southern District of Texas, presenting claims under the Jones Act, 46 U. S. C. § 688, the Death on the High Seas Act (DOHSA), 46 U. S. C. § 761, the general maritime law of the United States, App. 4, and the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001–71.031 (1986).

Respondents moved for summary judgment on the Jones Act and DOHSA claims, arguing that Chong was not a seaman, which rendered the Jones Act inapplicable, and that Chong had not died on the "high seas" but while the ship was in port, which rendered the DOHSA inapplicable. App. 9–10. Respondents also moved for summary judgment on the claim involving the general maritime law of the United

---

*Marks Cohen;* and for McClelland Engineers, Inc., et al. by *Harold A. Stone, Steven M. Perl, Graydon S. Staring,* and *Elliot L. Bien.*

*Burt Ballanfant* filed a brief for Shell Oil Co. as *amicus curiae.*

†Choo's attorneys, Benton Musslewhite and Joseph C. Blanks, having been specifically enjoined by the District Court, are also petitioners before this Court. For convenience, however, we shall use the term "petitioner" to refer only to Choo.

States, arguing that due to the lack of substantial contacts with the United States, the maritime law of Singapore, not that of the United States, governed. *Id.*, at 10 (citing *Lauritzen* v. *Larsen*, 345 U. S. 571 (1953); *Romero* v. *International Terminal Operating Co.*, 358 U. S. 354 (1959)). In addition to seeking summary judgment, respondents moved for dismissal under the doctrine of *forum non conveniens*, arguing that under the criteria identified in *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501 (1947), the District Court was not a convenient forum.

In 1980, the District Court, adopting the memorandum and recommendations of a Magistrate, granted respondents' motion for summary judgment on the Jones Act and DOHSA claims. The court agreed with respondents that those statutes were inapplicable. App. 29–31, 34. With respect to the general maritime law claim, the District Court applied factors identified in *Lauritzen* and *Hellenic Lines Ltd.* v. *Rhoditis*, 398 U. S. 306 (1970), to the choice-of-law question and concluded that the "statutory and maritime law of the United States should not be applied." App. 32. This conclusion led the court to grant summary judgment on petitioner's general maritime law claim, as well as to consider whether dismissal of the rest of the case was warranted under the doctrine of *forum non conveniens*. After reviewing the various factors set out in *Gilbert*, the court concluded that dismissal was appropriate and accordingly granted respondents' motion to dismiss on *forum non conveniens* grounds, provided respondents submit to the jurisdiction of the Singapore courts. The Court of Appeals for the Fifth Circuit affirmed. *Chick Kam Choo* v. *Exxon Corp.*, 699 F. 2d 693, cert. denied, 464 U. S. 826 (1983).

Rather than commence litigation in Singapore, however, petitioner filed suit in the Texas state courts. Although the state complaint initially included all the claims in the federal complaint, as well as a claim based on Singapore law, petitioner later voluntarily dismissed the federal claims. This

left only the Texas state law claim and the Singapore law claim. See Brief for Petitioners 4, n. 4. Respondents briefly succeeded in removing the case to the District Court on the basis of diversity of citizenship, but the Court of Appeals for the Fifth Circuit ultimately held that complete diversity did not exist and the case was returned to the District Court with instructions to remand it to state court. 764 F. 2d 1148 (1985).

Respondents then initiated a new action in federal court requesting an injunction to prevent petitioner and her attorneys, Benton Musslewhite and Joseph C. Blanks, "from seeking to relitigate in any state forum the issues finally decided" in the federal court's 1980 dismissal. App. 93. Petitioner moved to dismiss, arguing that the Anti-Injunction Act, 28 U. S. C. § 2283, prohibited the issuance of such an injunction. App. 96–98. Respondents, in turn, moved for summary judgment and a final injunction. *Id.*, at 104–108. The District Court granted respondents' motion and permanently enjoined petitioner and her attorneys "from prosecuting or commencing any causes of action or claims against [respondents] in the courts of the State of Texas or any other state . . . arising out of or related to the alleged wrongful death of Leong Chong." *Id.*, at 119.

Petitioner appealed, reiterating her contention that the injunction violated the Anti-Injunction Act. A divided panel of the Court of Appeals for the Fifth Circuit rejected this argument. The panel majority concluded that the injunction here fell within the "relitigation" exception to the Act, which permits a federal court to issue an injunction "to protect or effectuate its judgments." The majority reasoned that an injunction was necessary to prevent relitigation of the *forum non conveniens* issue because petitioner pointed to no additional factor that made the "Texas court in Houston a more convenient forum for this litigation than a United States District Court in Houston." 817 F. 2d 307, 312 (1987). The majority acknowledged that due to an "open courts" provision in

the Texas Constitution, Art. I, § 13, which is reflected in the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.031 (1986), the state courts may not apply the same, or indeed, any *forum non conveniens* analysis to petitioner's case. Rather, as the Court of Appeals noted, it is possible that "Texas has constituted itself the world's forum of final resort, where suit for personal injury or death may always be filed if nowhere else." 817 F. 2d, at 314 (footnote omitted). In this maritime context, however, the Court of Appeals majority concluded that the so-called "reverse-*Erie*" uniformity doctrine, see, *e. g., Offshore Logistics, Inc.* v. *Tallentire,* 477 U. S. 207, 222–223 (1986), required that federal *forum non conveniens* determinations pre-empt state law. Because the Court of Appeals found any independent state *forum non conveniens* inquiry to be pre-empted, it held that the injunction was permissible. Chief Judge Clark wrote separately but joined this conclusion. 817 F. 2d, at 325. Judge Reavley dissented, maintaining that the Texas courts should be allowed to apply their own open courts *forum non conveniens* standard. The dissent also criticized the majority's "bold new rule of preemption" which had the effect of "nullify[ing] the Texas open forum law for admiralty cases." *Ibid.*

The Court of Appeals' ruling conflicted with a decision of the Court of Appeals for the Ninth Circuit, *Zipfel* v. *Halliburton Co.,* 832 F. 2d 1477 (1988), cert. pending *sub nom. Crowley Maritime Corp.* v. *Zipfel,* No. 87–1122, which held that the Anti-Injunction Act precluded an injunction in similar circumstances. We granted certiorari to resolve the conflict, 484 U. S. 952 (1987), and now reverse and remand.

## II

The Anti-Injunction Act generally prohibits the federal courts from interfering with proceedings in the state courts:

> "A court of the United States may not grant an injunction to stay proceedings in a State Court except as ex-

pressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U. S. C. § 2283.

The Act, which has existed in some form since 1793, see Act of Mar. 2, 1793, ch. 22, § 5, 1 Stat. 335, is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts. It represents Congress' considered judgment as to how to balance the tensions inherent in such a system. Prevention of frequent federal court intervention is important to make the dual system work effectively. By generally barring such intervention, the Act forestalls "the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Vendo Co.* v. *Lektro-Vend Corp.*, 433 U. S. 623, 630–631 (1977) (plurality opinion). Due in no small part to the fundamental constitutional independence of the States, Congress adopted a general policy under which state proceedings "should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Atlantic Coast Line R. Co.* v. *Locomotive Engineers*, 398 U. S. 281, 287 (1970).

Congress, however, has permitted injunctions in certain, specific circumstances, namely, when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment. These exceptions are designed to ensure the effectiveness and supremacy of federal law. But as the Court has recognized, the exceptions are narrow and are "not [to] be enlarged by loose statutory construction." *Ibid.* See also *Clothing Workers* v. *Richman Brothers Co.*, 348 U. S. 511, 514 (1955). Because an injunction staying state proceedings is proper only if it falls within one of the statutory exceptions, *Atlantic Coast Line, supra,* at 286–287, and because the last of the three exceptions is the only one even arguably applicable

here, the central question in this case is whether the District Court's injunction was necessary "to protect or effectuate" the District Court's 1980 judgment dismissing petitioner's lawsuit from federal court.

The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel. The proper scope of the exception is perhaps best illustrated by this Court's decision in *Atlantic Coast Line, supra.*

That case arose out of a union's decision to picket a railroad. The railroad immediately sought an injunction from a Federal District Court to prevent the picketing. The court refused to enjoin the union, issuing an order in 1967 that concluded, in part, that the unions were "free to engage in self-help." *Id.*, at 289. The railroad then went to state court, where an injunction was granted. Two years later this Court held that the Railway Labor Act, 45 U. S. C. § 151 *et seq.*, prohibited state court injunctions such as the one the railroad had obtained. *Railroad Trainmen* v. *Jacksonville Terminal Co.*, 394 U. S. 369 (1969). This decision prompted the union to move in state court to dissolve the injunction, but the state court declined to do so. Rather than appeal, however, the union returned to federal court and obtained an injunction against the enforcement of the state court injunction. The District Court read its 1967 order as deciding not just that federal law did not authorize an injunction, but that federal law pre-empted the State from interfering with the union's right of self-help by issuing an injunction. Accordingly, the court concluded that an injunction was necessary to protect that judgment.

The Court of Appeals affirmed, but this Court reversed, holding that the federal court injunction was improper even assuming that the state court's refusal to dissolve its injunction was erroneous. 398 U. S., at 291, n. 5. After carefully

reviewing the arguments actually presented to the District Court in the original 1967 litigation and the precise language of the District Court's order, we rejected the District Court's later conclusion that its 1967 order had addressed the propriety of an injunction issued by a state court:

> "Based solely on the state of the record when the [1967] order was entered, we are inclined to believe that the District Court did not determine whether federal law precluded an injunction based on state law. Not only was that point never argued to the court, but there is no language in the order that necessarily implies any decision on that question." *Id.*, at 290.

Thus, as *Atlantic Coast Line* makes clear, an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, *Atlantic Coast Line* illustrates that this prerequisite is strict and narrow. The Court assessed the precise state of the record and what the earlier federal order *actually* said; it did not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say. With these principles in mind, we turn to the two claims petitioner seeks to litigate in the Texas state courts.

First, petitioner asserts a claim under Singapore law. App. 40. The District Court did not resolve the merits of this claim in its 1980 order. Rather, the only issue decided by the District Court was that petitioner's claims should be dismissed under the federal *forum non conveniens* doctrine. Federal *forum non conveniens* principles simply cannot determine whether Texas courts, which operate under a broad "open-courts" mandate, would consider themselves an appropriate forum for petitioner's lawsuit. See Tex. Const., Art. I, § 13; Tex. Civ. Prac. & Rem. Code Ann. § 71.031 (1986). Cf. *Pennzoil Co.* v. *Texaco, Inc.*, 481 U. S. 1, 11–12 (1987). Respondents' arguments to the District Court in 1980 re-

flected this distinction, citing federal cases almost exclusively and discussing only federal *forum non conveniens* principles. See App. 10–12, 17–26. Moreover, the Court of Appeals expressly recognized that the Texas courts would apply a significantly different *forum non conveniens* analysis. 817 F. 2d, at 314. Thus, whether the Texas *state* courts are an appropriate forum for petitioner's Singapore law claims has not yet been litigated, and an injunction to foreclose consideration of that issue is not within the relitigation exception.

Respondents seek to avoid this problem by arguing that any separate state law determination is pre-empted under the "reverse-*Erie*" principle of federal maritime law. See generally *Offshore Logistics, Inc.* v. *Tallentire*, 477 U. S., at 222–223; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149 (1920); *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205 (1917). Under this view, which was shared by the Court of Appeals, the only permissible *forum non conveniens* determination in this maritime context is the one made by the District Court, and an injunction may properly issue to prevent the state courts from undertaking any different approach.

The contention that an independent state *forum non conveniens* determination is pre-empted by federal maritime law, however, does little to help respondents unless that pre-emption question was itself actually litigated and decided by the District Court. Since respondents concede that it was not, Tr. of Oral Arg. 32, the relitigation exception cannot apply. As we have previously recognized, "a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear." *Atlantic Coast Line*, 398 U. S., at 294. See also *Clothing Workers* v. *Richman Brothers Co.*, 348 U. S. 511 (1955). Rather, when a state proceeding presents a federal issue, even a pre-emption

issue, the proper course is to seek resolution of that issue by the state court.

This is the course respondents must follow with respect to the Singapore law claim. It may be that respondents' reading of the pre-emptive force of federal maritime *forum non conveniens* determinations is correct. This is a question we need not reach and on which we express no opinion. We simply hold that respondents must present their pre-emption argument to the Texas state courts, which are presumed competent to resolve federal issues. Cf. *Pennzoil Co.* v. *Texaco, Inc., supra,* at 15–16; *Clothing Workers, supra,* at 518. Accordingly, insofar as the District Court enjoined the state courts from considering petitioner's Singapore law claim, the injunction exceeded the restrictions of the Anti-Injunction Act.

Finally, petitioner asserts a claim under Texas state law. In contrast to the Singapore law claim, the validity of this claim was adjudicated in the original federal action. Respondents argued to the District Court in 1980 that under applicable choice-of-law principles, the law of Singapore must control petitioner's suit. See App. 10. The District Court expressly agreed, noting that only two of the eight relevant factors "point toward American law," and concluding that the "statutory and maritime law of the United States should not be applied." *Id.,* at 32. Petitioner seeks to relitigate this issue in state court by arguing that "there are substantial and/or significant contacts" with the United States such that "the application of American and Texas law is mandated." *Id.,* at 39. Because in its 1980 decision the District Court decided that Singapore law must control petitioner's lawsuit, a decision that necessarily precludes the application of Texas law, an injunction preventing relitigation of that issue in state court is within the scope of the relitigation exception to the Anti-Injunction Act. Accordingly, insofar as the District Court enjoined the state courts from considering peti-

tioner's claim under the substantive law of Texas, the injunction was permissible.

Because the injunction actually entered by the District Court, *id.*, at 118–119, was broader than the limited injunction we find acceptable, we must reverse the judgment approving a broad injunction and remand for entry of a more narrowly tailored order. Of course, the fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue. On remand the District Court should decide whether it is appropriate to enter an injunction.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, concurring.

I agree with the Court that, as a general matter, "[f]ederal *forum non conveniens* principles simply cannot determine whether [state] courts, which operate under a broad 'open-courts' mandate, [will] consider themselves an appropriate forum" for a federal litigant's lawsuit. *Ante*, at 148. Consequently, in diversity cases—for example—a district court's dismissal on *forum non conveniens* grounds cannot serve as a basis for a later injunction if the plaintiff subsequently brings the same action in a state court.

But, as the Court recognizes, this case involves the special area of federal maritime law. *Ante*, at 149. In this field, the federal interest in uniformity is so substantial that a determination that federal law requires that a case be heard in a foreign forum could possibly pre-empt any contrary determination by a state court applying state *forum non conveniens* law. The Court acknowledges that our precedents may ultimately support such a conclusion in this case. *Ante*, at 149–150.

Had the District Court made such a finding here when it dismissed petitioner's case—holding that federal maritime law required that this case be heard in Singapore—then I be-

lieve that the relitigation exception found in 28 U. S. C. § 2283 would permit the injunction that the District Court later issued. Contra, *Zipfel* v. *Halliburton Co.*, 832 F. 2d 1477, 1488 (CA9 1988), cert. pending *sub nom. Crowley Maritime Corp.* v. *Zipfel*, No. 87–1122. This is true whether or not a finding of such pre-emption would have been correct: petitioner's remedy for an erroneous pre-emption decision would have been an appeal of the District Court's dismissal, and not relitigation of the issue in state court. However, the District Court's terse dismissal order in this case lacks any express ruling on uniformity or pre-emption. See App. 34–35. Absent such a holding, the District Court had no "judgment" on this question which it needed to "protect or effectuate" by enjoining the subsequent state court litigation. Cf. 28 U. S. C. § 2283.

Consequently, I agree with the Court that the relitigation exception to § 2283 cannot be invoked here, *ante*, at 150, and the judgment of the Court of Appeals affirming the District Court's injunction must be reversed in pertinent part.