**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MONTGOMERY WARD COMPREHENSIVE
HEALTH CARE PLAN; METROPOLITAN
LIFE INSURANCE COMPANY,
<u>Plaintiffs-Appellants,</u>

No. 95-2441

v.

MADONNA LAYNE; JEFFREY R. LAYNE,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-95-83-1)

Argued: April 3, 1996

Decided: July 23, 1996

Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Reversed and remanded with instructions by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Susan Gail Yurko, FURBEE, AMOS, WEBB &
CRITCHFIELD, Fairmont, West Virginia, for Appellants. Ronnie
Lee Tucker, Fairmont, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants, Montgomery Ward & Co., Inc., Comprehensive Health Care Plan (the "Plan") and Metropolitan Life Insurance Company ("Metlife"), seek an injunction pursuant to the relitigation exception of the Anti-Injunction Act, 28 U.S.C. § 2283, preventing the Appellees, Jeffrey and Madonna Layne (husband and wife), from prosecuting a third-party complaint against the Appellants in West Virginia state court. The district court denied the Appellants' request for an injunction and their motion to reconsider and vacate the judgment. The Plan and Metlife have now appealed. For the reasons that follow, we reverse and remand with instructions that the district court grant the injunction.

I.

This appeal is the latest in an ongoing series of battles over whether Mr. Layne is entitled to recover health coverage benefits from the Plan. In 1988 Mr. Layne was seriously injured in an automobile accident through the fault of another driver. At the time he was a covered person under the Plan through his wife, an employee of Montgomery Ward. As a beneficiary under his wife's policy, Mr. Layne was conditionally entitled to recover up to eighty percent of certain medical expenses incurred as a result of the accident.

As a prerequisite to recovery, Mr. Layne was required to sign a subrogation agreement with the Plan. The subrogation agreement would give the Plan the right to be made whole to the extent that the benefits it paid to Mr. Layne were less than the amount of any recovery he secured from the driver responsible for the accident. In other words, Mr. Layne would not be allowed a double recovery from both the Plan and the other driver. If, however, Mr. Layne recovered from the other driver an amount in excess of the amount of benefits paid by the Plan, he would be entitled to the excess.

2

Mr. Layne recovered $100,000 from the other driver and $100,000 from his own insurance company, releasing both from any further liability. (Mr. Layne's insurance company has no connection with the Plan.) Mr. Layne refused, however, to execute the subrogation agreement with the Plan. The Plan then sent Mr. Layne a reimbursement agreement in which the Plan agreed to provide coverage if, among other things, Mr. Layne agreed to reimburse the Plan from monies recovered from Mr. Layne's insurer. Mr. Layne also refused to execute this agreement. Finally, the Plan offered to cover Mr. Layne if he paid the Plan $66,666 (that is, two-thirds of the Laynes' recovery from the other driver). Mr. Layne again refused. Thereafter, the Plan notified Mr. Layne that no payments would be made by the Plan "on behalf of [his] injuries" and that his claim for benefits was closed.

A.

THE FIRST FEDERAL ACTION

After the Plan refused to provide coverage, the Laynes (through their attorney, Ronnie Lee Tucker) brought suit in state court in West Virginia against Metlife claiming that the Plan had breached its agreement to cover Mr. Layne. (Metlife processes claims on behalf of the Plan.) The case was removed to the District Court for the Northern District of West Virginia, and the Laynes substituted the Plan for MetLife as the defendant. In the Laynes' amended complaint they alleged that the Plan, by failing to inform Plan participants of their rights and obligations, violated disclosure requirements under the Employee Retirement Income Security Act, 29 U.S.C.§§ 1001 et seq. (ERISA). In particular, the Laynes alleged that the Plan failed to make clear that in order to qualify for benefits under the Plan, a covered beneficiary must execute a subrogation agreement.

On summary judgment the district court concluded that the Plan properly denied Mr. Layne benefits based on his failure to execute the subrogation agreement. In reaching this conclusion, the court held that the Plan accurately notified Mr. Layne that the Plan would pay medical costs which are carried by a third party or which could become the subject of a lawsuit only when the beneficiary has executed a subrogation agreement. The court stated that"this is an action seeking to enforce a right to double recovery which the Plan does not

3

provide for." Accordingly, the district court granted judgment in favor of the Plan and the case was dismissed with prejudice.

The Laynes appealed to this court, and we affirmed. Layne v. Montgomery Ward & Company, Inc., No. 94-1549 (4th Cir. Dec. 30, 1994) (unpublished per curiam opinion). We agreed with the district court that the Plan accurately notified Mr. Layne that he had to agree to subrogate to the Plan monies recovered from a third-party tortfeasor (i.e., the other driver) as a precondition to having his claim considered. Indeed, the Laynes conceded this point on appeal. We, therefore, held that the Plan properly denied benefits based on Mr. Layne's failure to execute the subrogation agreement. Layne, slip op. at 7.

Moreover, in so holding, we specifically recognized that, "the Laynes' counsel notified the [Plan] Administrator that Mr. Layne received a monetary settlement from the tortfeasor's insurance company and from Mr. Layne's own insurer . . . for approximately $200,000 in the aggregate." Id. at 5. We also recognized that, "the $66,666 that the Administrator offered to accept in full satisfaction of the subrogation agreement was well under the amount that the Laynes received from the tortfeasor . . . ." Id. at 6.**1**

B.

THE STATE COURT ACTION AND THE
CURRENT FEDERAL ACTION

Although Mr. Layne has recovered a total of $200,000 from his own insurer and the other driver, Mr. Layne has not paid all medical
_____

**1** Because the Plan agreed to provide benefits to Mr. Layne if he signed the subrogation agreement, or if he paid over $66,666 of the $100,000 recovered from the third-party tortfeasor, we did not reach the issue of whether the Plan could condition the payment of benefits on Mr. Layne's agreement to reimburse the Plan from monies recovered from his own insurer (as opposed to the third-party tortfeasor). See id. at 6 & n.4. That is, while we decided that the Laynes could not double recover from both the Plan and the tortfeasor, we did not reach the issue of whether the Laynes could double recover from the Plan and Mr. Layne's own insurer.

4

expenses incurred in the aftermath of the accident. Accordingly, the Laynes have been sued by one of Mr. Layne's health care providers in West Virginia state court. In turn, the Laynes filed a third-party complaint against the Appellants. They claim that the Plan and Metlife are liable for any judgment obtained by the health care provider.

The Plan and Metlife disagree, and they have filed this action in federal district court. Pursuant to the relitigation exception of the Anti-Injunction Act, 28 U.S.C. § 2283, the Plan and Metlife seek to enjoin the Laynes from prosecuting their third-party complaint. The relitigation exception provides that:

> A court of the United States may not grant an injunction to stay proceedings in State court except . . . to protect or effectuate its judgments.

Id. According to the Appellants, the Laynes' third-party complaint is an attempt to relitigate the issue of whether Mr. Layne is entitled to a double recovery. That is, because Mr. Layne has already recovered from the other driver and released the driver from any further liability, the Laynes can only succeed in their third-party complaint if Mr. Layne is allowed to recover from both the Plan and the other driver. That issue, says the Appellants, was necessarily decided against the Laynes in the first federal action.

The Laynes, however, through their attorney, Tucker, have attempted to create a new issue or issues. On the date that the district court heard oral argument on the injunction, Tucker filed with the court a document purporting to be a subrogation agreement (signed only by the Laynes). This "Subrogation Agreement" provided that the Laynes agreed that the Plan may be entitled to monies recovered from the other driver in the future. In particular, the document stated that, "This agreement transfers to Montgomery Ward . . . only a portion of my/our recovery from the third party tortfeasor of those expenses paid by Montgomery Ward . . . for which the third party is ultimately found to be legally liable." (Emphasis supplied.) The document also stated that, "reimbursement shall be limited to benefits paid by [the Plan] but in no event in an amount in excess of what the tortfeasor may be liable . . . ." (Emphasis supplied.)

5

Based on this document, Tucker argued that the state court action raised an issue distinct from those previously litigated in the first federal action. According to Tucker, because the Laynes had now agreed to subrogate their right to monies received from the other driver, the obligations of the Plan under the "Subrogation Agreement" would be at issue in state court. That issue, so Tucker argued, differed from whether the Laynes could recover from the Plan without first signing a subrogation agreement or whether the Plan had provided adequate notice that a subrogation agreement must be signed before benefits would be paid.

The district court agreed that the issue (as framed by Tucker) was not decided in the first federal action and therefore denied the injunction. As the court said:

> I think signing the subrogation agreement raises an issue that was not before me and was not decided at the time that this issue went to the Fourth Circuit. . . . Can the defendants and third party plaintiffs in the state court case, that is the Laynes, by signing a subrogation agreement, obligate the plan to pay pursuant to the terms of the plan?
>
> . . . .
>
> . . . [I]f I hear Mr. Tucker, by having his client sign the subrogation agreement today he has attempted to change the issue and that is whether now that they have signed the subrogation agreement, can they make a claim for indemnity in a case where there has been a collection action filed against them and I suspect that the state court litigation will have to demonstrate whether that raises a preempted issue under the Plan.

The district court, therefore, entered an order denying the Appellants' request for injunctive relief and dismissing the action.[2]

_____

[2] We note that the submission of the "Subrogation Agreement" does not raise the issue we did not reach in the first federal action, i.e., whether the Plan may demand that the Laynes sign a "Reimbursement Agree-

6

Within a week of the entry of the district court's order denying the injunction, the Plan and Metlife moved to reconsider and vacate the judgment pursuant to Rule 60(b), Fed. R. Civ. P. The Plan and Metlife argued that in submitting a document claimed to be a subrogation agreement Tucker misrepresented the legal effect of that document. Specifically, the Plan and Metlife argued that though the "Subrogation Agreement" purported to provide the Plan with subrogation rights, the document was in fact worthless because Mr. Layne had already recovered from the other driver and released him from any further liability. In essence, and in fact, therefore, the Laynes were attempting to transfer a right that they no longer possessed -- the right to a future recovery from the tortfeasor. Thus, the document was not a subrogation agreement. Instead, the Appellants argued it was a fraud.

Moreover, the Appellants continued, as the document could not transfer any right to the Plan, the document created no new issue not previously decided in the first federal action. This is true because one issue decided in the first federal action was that the Laynes were not entitled to a double recovery from both the Plan and the tortfeasor. Thus, the Appellants concluded, the purpose of submitting the "Subrogation Agreement" was to mislead the district court into believing that a recovery could be had against the Plan when in fact no recovery was possible.

_____

ment" conditioning the payment of benefits on Mr. Layne's agreement to reimburse the Plan from monies recovered from his own insurer (as opposed to the third-party tortfeasor). See Layne, slip op. at 6 & n.4. See also supra at 4 n.1. At the hearing, however, Tucker argued that the "Subrogation Agreement" raises this issue. It is somewhat unclear from the hearing transcript whether the district court was convinced by Tucker and therefore based its decision in part on this narrow issue as well as on the broader issue of the Plan's obligations under the "Subrogation Agreement." Nevertheless, as we explain in Part III, infra, assuming that the district court did believe that the "Subrogation Agreement" raised the issue of whether Mr. Layne may recover from both his own insurer and the Plan, the district court clearly erred because the "Subrogation Agreement" does not purport to reimburse the Plan with monies received from Mr. Layne's insurer.

7

The district court reluctantly disagreed, however. While the court found that Tucker had not accurately represented the terms of the "Subrogation Agreement" (and, in fact, admonished Tucker for being less than forthcoming), the district court denied the motion to reconsider and vacate judgment because the court believed it was constrained by existing precedent interpreting the relitigation exception. As the court explained:

> [D]espite what the Court's personal opinion may be with regard to the facts that have been presented to it here as it reviews this subrogation agreement and reviews the disingenuousness of the defendant's attorney's arguments nevertheless feels extremely constrained by existing United States Supreme Court precedent and Fourth Circuit precedent.

> . . . .

> . . . [B]ecause the exact words and questions that were litigated in the case in '94 are not before the Court today, . . . I cannot reconsider the issue and will not, therefore, rescind my order.

> But I want to make it very clear to you, Mr. Tucker, that I have reviewed this very carefully and I am honor bound to follow the law, sir, but what I find that you are about here is something that the spirit of what I ruled in '94 and what was reviewed by the Fourth Circuit is very clear. And when I read a subrogation agreement such as the one that has been filed here today, I do not find that it is, in fact, what you represented it to be during the hearing on June 27th. And I am constrained not to make a ruling on its legal status, but, I am, nevertheless, inspired here this morning to comment to you that I don't find it to be what you told me it was and I have nothing further to say with regard to this hearing and I conclude with those remarks.

As we explain below, though the district court exercised what would otherwise be commendable restraint in not exceeding its limited authority under the relitigation exception, in light of the undisputed record such restraint was unnecessary. No new issue has been

8

raised here that was not previously decided in the first federal action. The Appellants are therefore entitled to the injunction.

II.

Because the Plan and Metlife appeal from the district court's denial of their Rule 60(b) motion, we must first decide whether the district court abused its discretion in denying that motion. See, e.g., National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993); Werner v. Carbo, 731 F.2d 204, 206 (4th Cir. 1984). We believe that it did.

Rule 60(b) provides in part that, "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding . . . ." As we have previously said, "To bring himself within Rule 60(b), the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Werner , 731 F.2d at 207 (citation and footnote omitted). If these threshold requirements are met, then a movant must satisfy one of the listed reasons that the Rule provides as grounds for relief. Among others, these reasons include "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ." Fed. R. Civ. P. 60(b)(3). As we explained in Werner,"[the] grounds for relief often overlap, and it is difficult if not inappropriate in many cases to specify or restrict the claim for relief to a particular itemized ground." 731 F.2d at 207.

In this case, it is clear that the Appellants have met the threshold requirements of Rule 60(b). Specifically, the Appellants moved to reconsider and vacate the judgment within a week of the entry of the district court's order denying injunctive relief and dismissing the action. The Appellants' defense is meritorious because if the document, which is purported to be a subrogation agreement, does not in fact raise a new issue, then the Appellants are entitled to an injunction. There is also no unfair prejudice to the Laynes; indeed, their attorney, Tucker, chose not to submit the purported subrogation agreement to the district court until the day of the first hearing on the injunction. Exceptional circumstances also exist. Among other things, because the purported subrogation agreement was not submitted until

9

the date of the hearing, the district court did not have an opportunity to review the document before deciding to deny the injunction. The court, therefore, made its original decision based on assurances from an adverse party, assurances that ultimately proved to be wrong.

Moving then to the listed reasons for granting a Rule 60(b) motion, the Appellants contend that the purported subrogation agreement was both a fraud of an adverse party and a fraud on the court.**3** We need not reach the fraud questions here because we believe that Tucker's submission of the purported subrogation agreement and his statements as to its legal effect amounted to misrepresentations of an adverse party under Rule 60(b)(3).

In particular, when read in light of the record, the misrepresentations contained in the "Subrogation Agreement" are that (1) it purports to transfer to the Plan a portion of the Laynes' recovery from the "third party tortfeasor for those expenses paid by [the Plan] for which the third party is ultimately found to be legally liable," and (2) it provides that "reimbursement shall be limited to benefits paid by [the Plan] but in no event in an amount in excess of what the tortfeasor may be liable . . . ." (Emphasis supplied.) There, however, can never be any recovery or reimbursement from the third-party tortfeasor because there can be no future decision on the legal liability of the third-party tortfeasor. His liability has been established; he has already paid the settlement monies he owes the Laynes; and he has been released from any further claims.

In addition, Tucker, who drafted the "Subrogation Agreement," surely knew that the Laynes could not recover from the tortfeasor in the future. Yet, he did not represent to the court, which had not had an opportunity to review the document, that the "Subrogation Agreement" purported to transfer a right to the Plan that, as a matter of law and fact, the Laynes no longer possessed -- the right to a future

_____

**3** "Fraud upon the court," as distinguished from fraud of an adverse party, is limited to fraud which seriously affects the integrity of the normal process of adjudication. See, e.g. , Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988); Great Costal Express, Inc. v. International Broth., 675 F.2d 1349, 1356 (4th Cir. 1982), cert. denied, 459 U.S. 1128 (1983).

10

recovery from the tortfeasor. Indeed, even the district court recognized that Tucker misrepresented the effect of the purported "Subrogation Agreement" when the court stated to Tucker that, "when I read a subrogation agreement such as the one that has been filed here today, I do not find that it is, in fact, what you represented it to be during the hearing on June 27th."

Of course, the question still remains whether the district court abused its discretion in denying the Rule 60(b) motion. We think that the court did because even after it found that the document was not what Tucker represented it to be, the court still believed that the "Subrogation Agreement" created a new issue that was not decided in the first federal action. As explained below, however, no new issue is raised here. The district court, therefore, committed an error of law when it refused to grant the injunction. This error in turn led the court to "abuse" its discretion in failing to grant the Rule 60(b) motion. We therefore reverse the district court's denial of the Appellants' motion to reconsider and vacate judgment.

III.

We now address whether the Appellants are entitled to an injunction under the relitigation exception of the Anti-Injunction Act, 28 U.S.C. § 2283, preventing the Laynes from prosecuting their third-party complaint in state court. We hold that the Appellants are entitled to the injunction.

Again, the relitigation exception provides that:

> A court of the United States may not grant an injunction to stay proceedings in State court except . . . to protect or effectuate its judgments.

Id. According to the Supreme Court, "[t]he relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988). The exception is narrowly and strictly construed and

11

an injunction may issue only if the claims or issues have actually been decided. Id. at 148 (stating that the court must look to what the previous order "actually said" and may not "render a post hoc judgment as to what the order was intended to say") (emphasis in original); see LCS Servs. Inc. v. Hamrick, 925 F.2d 745, 749 (4th Cir. 1991) ("a complainant seeking to avail himself of the relitigation exception to the statute must make a strong and unequivocal showing of relitigation of the same issue") (citations and internal quotes omitted).

Here, because of the narrowness of the relitigation exception, the district court believed that it had no choice but to hold that Tucker's submission of the "Subrogation Agreement" created an issue different than those decided in the first federal action. We, however, believe that the district court interpreted the relitigation exception too narrowly in this instance. In light of the undisputed record developed in the first federal action and what our opinion and the district court's order in that action "actually said," the "Subrogation Agreement" creates no new issue.

The Laynes brought the first federal action claiming that the Plan did not accurately notify beneficiaries of the Plan's right to demand subrogation. The Laynes challenged the adequacy of the notice because so long as the Plan could demand subrogation, then the Laynes could not double recover from both the Plan and the third-party tortfeasor or Mr. Layne's insurer. In other words, the only way the Laynes could double recover was if they succeeded in proving that the Plan's subrogation notice was inadequate. The district court expressly recognized this fact when it said in the first federal action that "this is an action seeking to enforce a right to double recovery which the Plan does not provide for."

When we heard the first federal action, the Laynes did not argue that the district court erred in finding that the Plan does not permit a double recovery from both a third-party tortfeasor and the Plan itself. Rather, the Laynes complained that the district court erred to the extent that it held that the Laynes could not double recover from both Mr. Layne's insurer and the Plan. Layne, slip op. at 6 ("The gist of the Laynes' contention on appeal is that the district court erred as a matter of law in holding that the terms of the Plan authorized the Administrator to require the Laynes to reimburse the Plan out of

12

monies recovered from their own insurer."). We, however, did not reach that particular issue because we determined that the Plan Administrator was only seeking to subrogate to the Plan monies that Mr. Layne recovered from the third-party tortfeasor. Id. at 6 & n.4. And, in fact, the Laynes conceded that "the language [of the Plan] . . . authorized the Administrator to require participants to agree to subrogate to the Plan monies received from third party tortfeasors (and such tortfeasors' insurers) . . . ." Id. at 7. Thus, one issue we decided in the first federal action was that the Laynes could not double recover from both the Plan and the other driver, and we did not reach the issue of whether the Laynes could double recover from both the Plan and Mr. Layne's insurer.

No doubt, therefore, if the issue raised in the current litigation is whether the Laynes may double recover from both the Plan and Mr. Layne's insurer, then the Plan would not be entitled to an injunction under the relitigation exception. Yet, there is also no doubt that the "Subrogation Agreement" that Tucker submitted to the district court has absolutely nothing to do with the Plans' right to reimbursement for any monies recovered from Mr. Laynes' own insurer. Instead, the "Agreement" focuses exclusively on the Plan's rights in relation to any future recovery that the Laynes may obtain from the third-party tortfeasor. Therefore, the "Subrogation Agreement" has nothing to do with the issue we did not reach in the first federal action.**4**

More importantly, however, based on the record from the first federal action, we know that the Plan has no obligations under "Subrogation Agreement," and we, therefore, know that no new issue is

_____

**4** In addition, even if Tucker had submitted a document in which the Laynes agreed to reimburse the Plan with monies received from Mr. Layne's own insurer, such an agreement would not raise the issue we did not reach in the first federal action because it would be an agreement not to allow a double recovery. In other words, an agreement requiring the Laynes to reimburse the Plan with monies recovered from Mr. Layne's insurer would be an agreement to allow the Plan to proceed directly against the Laynes for the recovery of medical expenses. Thus, to the extent that Mr. Layne recovered benefits from the Plan, the Plan would have the right to be reimbursed by Mr. Layne to the extent that he has already recovered from his own insurer.

13

presented here or will be presented in the state court action. As we have said repeatedly, it is undisputed that Mr. Layne cannot make any future recovery against the third-party tortfeasor because Mr. Layne and the tortfeasor have reached a settlement releasing the tortfeasor from further liability. These are facts that we expressly recognized in the first federal action when we said (1) that the Laynes had reached a money settlement with the third-party tortfeasor and Mr. Layne's insurer and (2) that Mr. Layne had recovered approximately $100,000 from the third-party tortfeasor. Layne, slip op. at 5-6. Yet, it is the right to a future recovery that the "Subrogation Agreement" purportedly transfers to the Plan. Thus, because the "Subrogation Agreement" obligates the Plan to pay Mr. Layne's medical expenses and because Mr. Layne has already recovered from the tortfeasor, this "Subrogation Agreement" provides the Laynes with a double recovery from both the Plan and the third-party tortfeasor.

The Laynes, however, have no right to a double recovery from both the Plan and the tortfeasor because the Plan expressly prohibits such a recovery and that issue was decided against the Laynes in the first federal action. Therefore, the submission of the "Subrogation Agreement" merely re-raises the issue we decided in the first federal action. It does not raise the issue we declined to reach in the first federal action or some other issue. Indeed, because the Laynes have already recovered from the third-party tortfeasor, the Laynes could only recover from the Plan in the state court action if the court holds that the Laynes have the right to double recover both from the Plan and the third-party tortfeasor. Such a holding would be in direct conflict with the decision in first federal action.

Finally, even in the absence of the Laynes' execution of the purported "Subrogation Agreement," no argument could successfully be made that the state court action raises the issue of double recovery that we did not reach in the first federal action or some other issue. This is the case because the Plan agreed to allow the Laynes a double recovery from both the Plan and Mr. Layne's insurer provided that the Laynes either sign the subrogation agreement or pay over $66,666 of the $100,000 recovered from the third-party tortfeasor. Layne, slip op. at 6 ("Although it is true that some language in the "Reimbursement Agreement" apparently would have required the Laynes to tender to the Plan monies received from their own insurer, . .. the Laynes eas-

14

ily could have avoided such an obligation either by signing the `Subrogation Agreement' (which they had received earlier) or by agreeing to the $66,666 reimbursement offer (which was extended later)".). As we have stated above, the record shows that the document that Tucker claimed to be a subrogation agreement is not in fact such an agreement because the Laynes have already reached settlement with the third-party tortfeasor. In addition, it is undisputed that the Laynes have never paid over $66,666 of the $100,000 recovered from the tortfeasor. The Laynes are, thus, not entitled (or arguably entitled) to a "double recovery" from both the Plan and Mr. Layne's insurer.[5]

In sum, the Appellants are entitled to the injunction.[6]

IV.

The decisions of district court denying the Appellants' Rule 60(b) motion and denying the Appellants' request for an injunction are reversed. We remand the case with instructions that the district court

———————————————————————————————————

[5] Of course, it is slightly inconsistent to say that the Laynes would be entitled (or at least arguably entitled) to a double recovery once they have paid over $66,666.

[6] On appeal, the Laynes (and Tucker) argue for the first time that an injunction should not be granted because Metlife was not a party in the first federal action. Therefore, according to the Laynes, because only a party to a previous action may invoke the doctrine of res judicata, Metlife is not entitled to an injunction under the relitigation exception. Even assuming that this issue is not waived, what, of course, this argument ignores is that the relitigation exception is based on both the doctrines of "res judicata and collateral estoppel." Chick Kam Choo, 486 U.S. at 147. Thus, so long as the issue raised in the state court action is identical to the issue actually decided in the prior federal action, a party is entitled to an injunction under the relitigation exception no matter whether that party was a party in the prior federal action or not. To hold otherwise would allow a litigant to defeat the relitigation exception simply by adding a party to the state court action that was not a party to the prior federal action.

enter an order enjoining the Laynes from prosecuting their third-party complaint against the Appellants in state court.

<u>REVERSED AND REMANDED WITH INSTRUCTIONS</u>

16