MLE REALTY ASSOCIATES, as assignee of the judgment entered on behalf of the FDIC, as receiver for The First New York Bank for Business, Plaintiff–Appellee,

Federal Deposit Insurance Corporation, Plaintiff,

v.

Emmerich HANDLER and Rita Handler, Defendants–Appellants.

No. 98–6263.

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1999

Decided Sept. 23, 1999

Wayne M. Greenwald, Bienenfeld & Wertman, New York, NY, for Defendants–Appellants.

Rod Kovel, Weinstock, Joseph, Klatsky, Nisonoff & Schwartz, LLP, Belle Harbor, NY, for Plaintiff–Appellee.

Before: FEINBERG, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Defendants-appellants Emmerich and Rita Handler appeal from an interlocutory order of the United States District Court for the Southern District of New York (Patterson, *J.*), ordering the Handlers to withdraw their pending state court action against plaintiff-appellee MLE Realty Associates ("MLE") with prejudice and enjoining them from instituting any further actions of a similar nature. We vacate the district court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

This appeal stems from MLE's attempts to collect a judgment entered against the Handlers. A New York state trial court originally entered judgment against the Handlers on behalf of the First New York Bank for Business (the "Bank"). Subsequently, the State of New York declared the Bank to be in an unsound condition and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. On November 17, 1993, the district court adopted the judgment of the state court and entered judgment against the Handlers and for the FDIC in the amount of $492,370.05. That judgment was summarily affirmed on appeal to this court. *See FDIC v. Handler,* 57 F.3d 1063 (2d Cir. 1995). It has never been paid.

The judgment was assigned several times. The FDIC assigned it to Dennis Joslin, who assigned it to Israel Weinstock, who assigned it to MLE, the current judgment-creditor. In the course of post-judgment proceedings in the district court, the court ordered that its records be amended to reflect that the judgment had been assigned to MLE. Pleadings were filed by both sides and argument was held before the district court on the issue of whether MLE should be substituted as plaintiff in the action. The eventual result was a stipulation, signed by counsel for the Handlers, and approved by the district court, substituting MLE as plaintiff.

The post-judgment proceedings, which are continuing in the district court, have been extremely acrimonious and marked by numerous discovery disputes. On August 5, 1998, the district court granted MLE's motion pursuant to Federal Rule of Civil Procedure 37(a) to compel discovery because the Handlers had willfully failed to answer interrogatories, and directed the Handlers to answer by August 10. After the Handlers' continued refusal to cooperate with the discovery process, and after MLE made a motion to hold them in contempt pursuant to Rule 37(b), the district court ordered the Handlers to appear in court on October 28, 1998, to give responsive answers to some of MLE's interrogatories.

The day before the hearing, the Handlers filed a champerty action against MLE in New York State Supreme Court, Kings County, and obtained an *ex parte* order prohibiting MLE from taking any action to enforce its judgment in the district court. As a result of the state court action, the district court adjourned its October 28 hearing until November 6 to allow the state court to vacate the *ex parte* order. Instead, the state court adjourned its hearing to mid-December.

On November 13, the district court issued an order instructing the Handlers to withdraw their pending state champerty action against MLE with prejudice and enjoining them from instituting any similar state court actions. The court noted that in the course of post-judgment proceedings, MLE had presented evidence "that the Handlers have concealed property from the [FDIC] and the subsequent holder of the judgment." The court commented further:

The Handlers' state court action is a clear attempt to evade the Federal judgment entered by this Court. The only explanation for the state court lawsuit is the Handlers' effort to harass MLE and delay and impair MLE's ability to en-

gage in further discovery and to collect on a judgment entered by this Court.

The Handlers requested a stay of the injunction pending appeal, and the district court denied their application. This Court also denied the Handlers' application for a stay. This appeal followed.

## DISCUSSION

On appeal, the Handlers argue (1) that the district court improperly issued the injunction *sua sponte*, without giving them notice and an opportunity to be heard; and (2) that the injunction was barred by the Anti–Injunction Act, 28 U.S.C. § 2283 (1994).

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292, which gives the courts of appeals jurisdiction over "[i]nterlocutory orders of the district courts . . . granting . . . injunctions." *Id.* § 1292(a)(1).

### A.  Notice

■ Under the All–Writs Act, 28 U.S.C. § 1651(a), district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* The All–Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits. *See, e.g., Shuffman v. Hartford Textile Corp. (In re Hartford Textile Corp.)*, 613 F.2d 388, 390–91 (2d Cir.1979) (per curiam) (noting that, under the All–Writs Act, the district court may, *sua sponte*, enjoin further filings by vexatious litigants). Even when such a *sua sponte* injunction is proper, however, and even when the district court's action is understandable in light of the vexatiousness of the litigation, such an injunction may not issue without notice to the party enjoined and an opportunity for that party to be heard. *See id.* at 390. We recently reaffirmed that "[t]he unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant

*sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir.1998) (per curiam).

■ It is uncontested that the district court did not give formal notice to the Handlers that it was considering enjoining the pending state proceedings, nor did it give them a hearing on the subject. We therefore vacate and remand so that the district court can provide proper notice and a hearing to the parties on the issue.

### B.  The Anti–Injunction Act

■ A district court's authority under the All–Writs Act is limited by the Anti–Injunction Act, 28 U.S.C. § 2283. That Act reads:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

*Id.* The Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

The district court found that the injunction was proper under the third exception; injunctions may issue where necessary "to protect or effectuate [a federal court's] judgments." 28 U.S.C. § 2283. This exception is also known as the relitigation exception. As the Supreme Court has explained, "[t]he relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The Court went on to note that "an essential prerequisite for applying the relitigation excep-

tion is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, . . . this prerequisite is strict and narrow." *Id.* at 148, 108 S.Ct. 1684.

In *Staffer v. Bouchard Transportation Co.,* 878 F.2d 638 (2d Cir.1989), this Court interpreted this language in *Chick Kam Choo* to mean that the relitigation exception is narrower than the doctrine of res judicata, holding:

> [T]he part of the relitigation exception to the Anti–Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata. The relitigation exception does not protect the full res judicata effect of a federal court's judgment; rather, it protects only matters that actually have been decided by a federal court.

*Id.* at 643.

The Handlers argue that their claim of champerty was not decided by the district court, and that the relitigation exception therefore does not apply. Because we vacate and remand to the district court on the ground of lack of notice, we need not and do not now decide whether, after *Staffer,* the relitigation exception applies only to issues which the parties would be collaterally estopped from relitigating, or whether it is broader. We note, however, that it is clear that, where collateral estoppel applies, the relitigation exception will also apply.

The Handlers' state court suit against MLE's putative champerty is based on the assignment of the FDIC's judgment to Israel Weinstock (a lawyer) and thence to MLE, in alleged violation of section 488 of the New York Judiciary Law, which prohibits attorneys from buying or taking assignment of any "thing in action, with the intent and for the purpose of bringing an action thereon." N.Y. Jud. Law § 488(1) (McKinney 1983). Notably, the Handlers did not raise a champerty defense in the district court. In the course of the post-judgment proceedings in the district court, the parties did, however, dispute the question of whether MLE should be substituted as plaintiff in the collection action. This issue was briefed and argued. And it was resolved by a stipulation mentioning the assignment and providing:

> WHEREAS, the undersigned attorneys for the judgment creditor and the judgment debtors are agreed that MLE REALTY ASSOCIATES should be substituted as plaintiff and judgment creditor pursuant to FRCP 25(c), and that the caption of this action be amended accordingly;

> IT IS HEREBY STIPULATED AND AGREED: that MLE REALTY ASSOCIATES be substituted for and in place of the FEDERAL DEPOSIT INSURANCE CORPORATION as plaintiff and judgment creditor in this action. . . .

We do not decide whether this stipulation itself collaterally estops the Handlers from litigating their champerty claim in state court. Nor do we decide whether, apart from collateral estoppel, the stipulation sufficiently decides the matter so that it permits an injunction under the relitigation exception as defined in *Staffer.* We note, however, that were the district court to hold a hearing on the *bona fides* of the assignment, which, despite the stipulation, are now being contested by the Handlers, and if both parties had a full and fair opportunity to litigate the champerty defense in the context of that hearing, the district court's judgment as to the validity of the assignment would be binding. That is, it would collaterally estop either party from revisiting that issue in a state court action, *see United States v. Hussein,* 178 F.3d 125, 129 (2d Cir.1999) (setting out the requirements for collateral estoppel), and it would have concomitant consequences under the relitigation exception to the Anti–Injunction Act.

\* \* \*

Because notice to the Handlers was not given, the district court's order is VACATED

and REMANDED to that court for further proceedings consistent with this opinion.