**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-60913
_____

ASSURANCE COMPANY OF AMERICA,

Plaintiff - Appellee,

versus

BRUCE KIRKLAND,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi

November 26, 2002

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Bruce Kirkland ("Kirkland") appeals the district court's grant of summary judgment in favor

of plaintiff-appellee Assurance Company of America ("Assurance") in Assurance's action, pursuant

to the relitigation exception to the Federal Anti-Injunction Act (the "Act"),[1] to enjoin Kirkland from

_____

[*]District Judge of the Western District of Texas, sitting by designation.

[1] 28 U.S.C. § 2283 (stating, in relevant part, "[a] court of the United States may not grant an injunction to stay proceedings in a state court except . . . to protect or effectuate its judgments."). The relitigation exception allows a federal court "to prevent state litigation of an issue that previously

individually pursuing an insurance claim against Assurance in state chancery court.

## I.

Kirkland Development, Inc. ("KDI"), a company wholly owned by Kirkland and primarily involved in the construction of homes, filed a civil complaint in the Mississippi Chancery Court, seeking to recover on a general-liability insurance policy it maintained with Assurance. In support of its claims, KDI alleged that it, through Kirkland, orally contracted to repair or reconstruct a retaining wall on the property of Heritage Apartments, a partnership run by Kirkland and his mother, and adjacent to property owned by Marion and Chyrl Lynn Grubbs. KDI also alleged that it subcontracted with a company owned by Keith Moon ("Moon") to perform the repairs. Kirkland signed the alleged contract with Moon on the letterhead of Kirkland Company, a company that was owned by Kirkland's mother and that was primarily in the business of managing apartment houses. KDI alleged that, while repairs were underway, the retaining wall, and the soil which it supported, collapsed and caused damage to the apartments and the Grubbs' property. According to KDI, it had to spend approximately $137,000 of its own money to repair the damage. KDI thus sought indemnity for these expenditures pursuant to its contract with Assurance.[2]

Assurance removed the action from the Mississippi Chancery Court to the federal district

---

was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *J.R. Clearwater, Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996) (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S. Ct. 1684, 1690, 100 L.Ed. 2d. 127 (1988)) (other citations omitted).

[2] In its claim on the Assurance policy, KDI blamed the damage caused by the collapse of the retaining wall on the faulty workmanship of Moon's company. Assurance initially denied coverage for the claim of KDI based on an exclusion in the policy, but, after further investigation and after KDI filed suit in Madison County Chancery Court, Assurance accepted liability for the damage to the property adjacent to Heritage Apartments. Assurance did not, however, accept liability for the damage to Heritage Apartments.

court, where the action proceeded to a bench trial. Refusing to accept liability for the damage to Heritage Apartments, Assurance argued that KDI had not contracted with Heritage Apartments to repair the retaining wall and was, therefore, not covered by the policy. Rather, Assurance argued, Kirkland Company, through its employee, Kirkland, had orally contracted with Heritage Apartments and subcontracted with Moon to make repairs to the retaining wall that resulted in the claimed damages. The district court entered an oral opinion in which it granted summary judgment in favor of Assurance. Regarding the issue of whom Kirkland represented when he orally contracted with Heritage Apartments to repair the retaining wall, the court found that "Mr. Kirkland was acting, as between him and [Heritage Apartments], as . . . Kirkland Company, [not] Kirkland Development." Further, the court found that Kirkland, individually, had "borrowed" money "in his own name" to pay for the cost of the wall and repairs to the Grubbs' property. Accordingly, the court denied KDI declaratory relief and dismissed all of KDI's claims with prejudice for the "simple reason" that KDI had not met its burden of proving that it incurred the expenses for the repairs.[3]

On appeal, we affirmed the district court's judgment in an unpublished per curiam order, without an opinion.

II.

Subsequent to the KDI litigation, Kirkland, as an individual, filed a civil complaint in state chancery court against Assurance. Kirkland argued that, because the federal court found that he

---

[3] In addition, the district court made alternative rulings "[i]n the event the court [is found to be] incorrect [on appeal] in ruling that there [was] no coverage" for KDI: Under the insurance contract, there was no coverage for KDI for damages that arose out of the contractor's incorrect repairs to the wall itself. However, because no work was incorrectly performed on "the concrete apron on which the air-conditioning units sat or on the storm sewer drains which clogged and caused flooding into the apartments themselves," there theoretically would be coverage for KDI as to these items.

personally borrowed money to account for damages caused by the collapse of the retaining wall,[4] he is entitled to recover on the Assurance policy as a individual insured.

In April of 2001, Assurance filed the instant complaint in federal district court for injunctive relief pursuant to the relitigation exception to the Act. Assurance urged the district court to enjoin the chancery court action filed by Kirkland, on the ground that the issues set forth in Kirkland's complaint had been "finally litigated" in the prior federal action.[5] Assurance argued that the parties in the two actions were in privity with one another; that the prior federal judgment was by a court of competent jurisdiction; that the prior action concluded with a judgment on the merits; and that "the same claim or cause of action" was involved in both actions. In his answer, Kirkland denied that, as an individual, he was barred by the prior federal judgment. Subsequently, Assurance filed a motion for summary judgment, which the district court granted in favor of Assurance pursuant to the relitigation exception. We now review the district court's decision to grant summary judgment in favor of Assurance.

### III.

The issue here is whether the district court erred in applying the Act's relitigation exception to enjoin Kirkland's chancery court action. "The application of the relitigation exception is an issue of law, and therefore, this court reviews de novo the [district] court's determination that an injunction may be issued under that exception." *Regions Bank of La. v. Rivet*, 224 F.3d 483, 488 (5th Cir.), *cert denied*, 531 U.S. 1126 (2001).

---

[4] The court determined that Kirkland had "borrowed" money to pay for the repairs "in his own name."

[5] Alternatively, Assurance sought partial injunctive relief limiting damages in the chancery court action in accordance with the federal district court's alternative ruling.

To determine whether the relitigation exception was applicable, the district court applied the four-part test adopted in *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384 (5th Cir. 2000).[6] According to the district court, the only issues were whether the parties were in privity with the parties in the prior federal action, and whether the same claim or cause of action is involved in both suits.[7] The court concluded that privity exists between the parties in the two actions because 1) it was not disputed that Assurance was a party to the prior suit, and 2) Kirkland is the sole shareholder of KDI and, at the prior trial, had spoken of KDI "as if he were speaking of himself." To determine whether the two actions involved the same claim or cause of action, the district court used a "transactional test," whereby the court addressed whether the two actions were based on the same "nucleus of operative facts."[8] The court reasoned that "[t]here is only one key fact of relevance in

---

[6]In *Gillispie*, the court explained that, to determine whether the relitigation exception is applicable, the Fifth Circuit uses a four-part test:

> First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have been concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.

*Gillispie*, 203 F.3d at 387 (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)).

[7] The court noted that it is not disputed that the judgment in the prior action was rendered by a court of competent jurisdiction and that the prior action concluded with a final judgment on the merits.

[8] In this Circuit, courts apply

> a transactional test to determine whether two claims involve the same cause of action, under which the critical question is 'not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts.' In evaluating the res judicata effect of a prior claim on a subsequent one, the transactional test does not inquire whether the same *evidence* has been presented in support of the two claims, but rather

-5-

both the prior and instant actions: Whether Kirkland orally contracted with Heritage Apartments on behalf of Kirkland Company to make the repairs to the retaining wall that ultimately caused the damages upon which Kirkland filed his insurance claim with Assurance." Thus, according to the district court, to prevail in the chancery court action, Kirkland would be required to show that the federal court's judgment in the prior action "was in error and that [Kirkland] was acting on his own behalf, not as Kirkland Company, when he orally contracted with Heritage Apartments to repair the retaining wall." The court granted summary judgment in favor of Assurance, reasoning that "this is precisely the type of claim that is barred by the doctrine of res judicata, and that in turn is precisely the type of situation that the relitigation exception to the Anti-Injunction Act is intended to cover."

We disagree with the district court's judgment that the relitigation exception applies in this situation. "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). This prerequisite is "strict and narrow," and so we must "assess[] the precise state of the record and what the earlier federal order *actually* said," rather than "render a *post hoc* judgment as to what the order was *intended* to say." *Id.* In the prior federal trial, the district court entered judgment for Assurance for the "simple reason that the proof has failed to show that [KDI] has itself incurred th[e] expenditures" associated with the repairs, at least some of which were paid personally by Kirkland. Simply, KDI lost because it was an improper plaintiff. The "key fact" at issue in the prior federal action was thus whether KDI was even a proper party to the action. The

_____

asks *whether the same key facts are at issue in both of them*.

*Gillispie*, 203 F.3d at 387 (citation and footnote omitted).

subsequent chancery court suit by Kirkland raises a different factual inquiry: whether Kirkland is entitled to coverage under the Assurance policy as an individual insured.

Kirkland concedes that, if he, rather than KDI, had been the plaintiff in the prior federal action, res judicata would bar him from suing Assurance company a second time in the state chancery court. However, "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by . . . the rules of res judicata in a subsequent action in which he appears in another capacity." RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982). Therefore, even though Kirkland was in privity in the first suit with KDI, res judicata does not bar Kirkland's instant chancery court claim because Kirkland now sues on his own behalf, as a named insured.

Neither do the principles of collateral estoppel bar Kirkland's instant chancery court claim. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id*. at § 27. Assurance argues that, because the district court in the prior federal case concluded that Kirkland was acting in his capacity as manager of the uninsured Kirkland Company, and not as KDI, when he orally contracted with Heritage Apartments to make repairs to the retaining wall, the district court also finally decided the question of whether Kirkland is entitled to redress as an individual insured. On the contrary, the issue of whether Kirkland is entitled to redress as an individual insured was not adjudicated. The only determinations essential to the prior judgment rendered by the district court were that KDI was not a party to the repair contract with Heritage Apartments, and that KDI did not incur expenses for the repairs. These determinations are binding on Kirkland in later litigation. However, these determinations did not finally decide the issue of whether Kirkland is entitled to redress as an

individual insured.[9] It is at least arguable that, to answer the question of whether Kirkland is entitled to redress as an individual insured, it does not matter whether Kirkland negotiated the construction contract on behalf of Kirkland Company, because he is separately named as an insured, and the policy might not restrict Kirkland's right to coverage to situations in which he represents any particular person or entity.[10] Furthermore, contrary to Assurance's argument, the district court in the prior federal action did not find that Kirkland "was not acting in his individual capacity" in connection with the repairs. Rather, the district court found that Kirkland had "borrowed" money to pay for the repairs "in his own name." Such a finding leaves open the possibility that Kirkland might have some personal liability that does not belong solely to KDI. Moreover, even if the district court had determined that Kirkland "was not acting in his individual capacity" in connection with the repairs, relitigation of that issue in a subsequent action would not be precluded because the district court's decision to dismiss KDI's claims was not dependent upon that determination. *See id*. at § 27(h) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the

---

[9] Kirkland concedes that, if KDI had lost the prior federal suit because of a finding of fact, necessary to the judgment, which would defeat Kirkland's individual claim as a separately named insured on Assurance's policy, then that previously adjudicated fact would be binding on Kirkland under principles of collateral estoppel and, if it were a fact which would preclude him from recovering as an individual, it would thus defeat his claim in the instant chancery court action. For example, Kirkland would be collaterally estopped from arguing in a second suit against Assurance Company that KDI was involved in the construction contract, because that was the adjudicated fact forming the essential basis of the district court's prior dismissal.

[10] Kirkland argues that the Assurance policy does not restrict Kirkland's right to coverage to situations in which he represents any particular person or entity. Kirkland also points out that, if Assurance had not intended to insure Kirkland as a party separate from his corporation, KDI, it would have been unnecessary for the policy to name both Kirkland and KDI as named insureds. Thus, according to Kirkland, the policy itself recognizes the possibility that there may be coverage for Kirkland and not for KDI, or vice versa.

characteristics of dicta.").

Therefore, we conclude that the district court erred when it applied the Act's relitigation exception to enjoin Kirkland's chancery court action. The district court's grant of summary judgment in favor of Assurance is REVERSED.